JOURNAL ENTRY and OPINION
Norman Gertz, the administrator of the estate of Milton Luther, and Luther's brother, Konrad, appeal from a decision of the common pleas court which granted summary judgment in favor of Milton's employer, Nerone Sons, Inc., on Gertz's intentional tort claim and Konrad's intentional infliction of emotional distress claim in connection with Luther's death when he fell while installing metal roof decking at a construction site in Mentor, Ohio.
On appeal, Gertz and Konrad maintain that they presented evidence on each of the elements of workplace intentional tort and intentional infliction of emotional distress, and therefore these claims should have survived summary judgment. We disagree, and conclude that the court properly granted summary judgment in this case. Accordingly, we affirm that judgment.
The record reveals that Nerone Sons, Inc., a subcontractor responsible for the structural steel and metal decking for the construction of a Home Depot store in Mentor, Ohio, employed Milton Luther and his brother, Konrad, as structural ironworkers for this project.
Although the Occupational Safety and Health Administration mandates fall protection for those working at heights above 25 feet, and although this project involved working at a height of 27 feet above a concrete floor, Nerone did not provide such protection for its employees. John Ruple, Nerone's project superintendent, admitted in his deposition that he mistakenly believed that OSHA did not require fall protection for heights less than 30 feet.
On July 18, 1999, after several days on the job, Luther fell through a 17-inch-wide by 5-feet-long opening in the roof, landing on the concrete floor below, and suffering fatal injuries.
Konrad had been working close by, when he heard another worker yell, Man down. He did not witness his brother's fall, but he and Ruple went to Luther's aid until EMS arrived. Upon arrival, EMS transported Luther to the hospital, where he died later that evening.
On May 30, 2000, Norman Gertz, the administrator of Luther's estate, filed an intentional tort claim against Nerone and negligence claims against Commsteel, Inc., another subcontractor on the job site, and Abrams Construction, Inc., the general contractor of the Mentor Home Depot project. The complaint also contained an intentional infliction of emotional distress claim against these defendants on behalf of Konrad.
Subsequently, Gertz and Konrad voluntarily dismissed Commsteel, Inc. and Abrams Construction, Inc., leaving only their claims against Nerone pending in this case.
On July 20, 2001, Nerone Sons, Inc. moved for summary judgment on the remaining claims, which Gertz and Konrad opposed. On October 3, 2001, the trial court granted Nerone's motion for summary judgment on both claims.
Gertz and Konrad now appeal from that judgment, and raise two assignments of error for our review. The first states:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE NERONE SONS, INC., AS A RESULT OF ITS APPLICATION OF THE WRONG STANDARD FOR INTENTIONAL TORT CLAIMS.
Gertz claims the trial court erred in granting Nerone's motion for summary judgment in connection with his workplace intentional tort claim, arguing that it knew working 27 feet above a concrete floor without fall protection constituted a dangerous condition, that it knew serious injury or death would be substantially certain to occur if an individual fell from this height, and that, despite this knowledge, it required its employees to lay metal roof decking 27 feet above the concrete floor.
Nerone counters that, although its conduct may have been negligent or reckless, its misinterpretation of OSHA fall protection standards and its failure to provide fall protection does not rise to the level of an intentional tort. In particular, it asserts it did not know that death or serious injury would be substantially certain to result from requiring its workers to install roof decking 27 feet above the concrete floor without fall protection.
In Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267, the court set forth the following standard for summary judgment under Civ.R. 56(C):
 Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Here, we are called upon to consider whether the trial court properly granted summary judgment to Nerone, and specifically whether working at a height of 27 feet above a concrete floor without fall protection constitutes a dangerous condition; whether Nerone knew that installing the roof decking under these conditions constituted a dangerous process; whether it knew that, by subjecting its employees to such a condition, death or serious injury would be substantially certain to occur; and whether, despite such knowledge, it required its employees to continue to perform this task.
Our review of the record reveals that no genuine issues of material fact exist; therefore, the only question before us concerns whether Nerone is entitled to judgment as a matter of law.
Recently, in Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171,2002-Ohio-2008, 766 N.E.2d 982, the court reaffirmed the following three-prong test needed for an employee to establish an intentional tort claim at q18:
 * * * We held in Fyffe [Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108] that "in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id., 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.
Gibson also reaffirmed paragraph two of the syllabus in Fyffe, where the court outlined the proof necessary to establish intent on the part of the employer as follows:
 * * * "to establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness.
 As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result.
 However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."
Here, relying on Busch v. Unibilt Industries, Inc. (Sept. 22, 2000), Montgomery App. No. 18175, Gertz urges that, based on the height from which Luther fell and the existence of a concrete floor below, Nerone knew or should have known that death or serious injury would have been substantially certain to occur if a worker fell.
In Busch, the Second Appellate District stated:
 Whether any harm was a substantial certainty in the context of Van Fossen depends on the probability of its occurrence. An event is certain if it is inevitable; that is, given to and marked by complete assurance and conviction. In human affairs, only death satisfies that test. Thus, and for these purposes, the harm involved must have been a "substantial certainty." When used as an adjective, substantial means that which is specified to a large degree or in the main.
Webster's Third New International Dictionary (1986).
 So long as the Earth rotates on its axis, the law of gravity is certain. While the law of gravity prevails, it is also certain that an unsupported object will fall until its travel is interrupted by some object or surface below. When the falling object is a human being, harm resulting from the fall is a substantial certainty, depending on (1) the height from which the fall takes place and (2) the hazard presented by the surface or objects below. (Emphasis added.)
While no one could disagree that death or serious injury would be substantially certain to occur if a worker fell from a height of 27 feet onto a concrete surface, the issue here is not whether injury is substantially certain to occur from such a fall, but rather whether Nerone knew or should have known that, without fall protection, a fall by one of its workers would have been substantially certain to occur under these circumstances.
Gertz argues, and Nerone concedes in its brief, that comparative negligence and assumption of the risk are not defenses to workplace intentional torts. Gertz further relies on the fact that Nerone violated OSHA standards which required fall protection for work above 25 feet. A violation of an OSHA standard may help establish negligent or even reckless conduct on the part of an employer; however, a violation of an OSHA standard, by itself, is insufficient to illustrate that death or serious injury is substantially certain to occur. See, e.g., Goodin v. Columbia Gas of Ohio, Inc. (2000), 141 Ohio App.3d 207, 225,750 N.E.2d 1122. As such, the undisputed fact that Nerone violated OSHA fall protection standards does not satisfy the second prong of Fyffe; to do so, Gertz must establish that by subjecting its workers to this task, Nerone had actual or subjective knowledge a fall would be substantially certain to occur.
Nerone emphasizes the fact that there is no evidence of any previous accidents involving a fall of this nature; however, as Gertz points out, the lack of previous accidents is not dispositive. See Cook v. Cleveland Elec. Illuminating Co. (1995), 102 Ohio App.3d 417, 429, 657 N.E.2d 356. Nevertheless, as the Tenth District stated in Foust v. Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451, 455, 657 N.E.2d 356:
 Upon review of the record, we find no error in the trial court's determination that plaintiffs failed to provide sufficient evidence on the second prong of the Fyffe test, requiring the employee to show knowledge by his employer that harm to the employee would be a "substantial certainty." In the present case, it was undisputed that the procedure had been performed "thousands of times" without a prior accident. The evidence indicated that Foust himself had performed the procedure over one hundred times during the course of a year without incident. Evidence of prior accidents involving the procedure at issue is one factor to be considered under the Fyffe analysis. Van Fossen, supra, 36 Ohio St.3d at 118, 522 N.E.2d at 505-506. While such evidence, standing alone, may not be conclusive, it strongly suggests, as in the instant action, that injury from the procedure was not substantially certain to result from the manner in which the job was performed.
 See, e.g., Wehri v. Countrymark, Inc. (1992), 82 Ohio App.3d 535, 538, 612 N.E.2d 791, 793-794
(showing of no prior accidents evidencing a dangerous condition curtails plaintiff's intentional tort claim); Gray v. Continental Alloy Steel Co. (1990), 70 Ohio App.3d 425, 430, 591 N.E.2d 359, 362 (record devoid of any evidence that appellee had knowledge of any prior injuries); Zink v. Owens-Corning Fiberglas Corp. (1989), 65 Ohio App.3d 637, 643-644, 584 N.E.2d 1303, 1307-1308 (evidence showing lack of prior accidents negates daunting standard of substantial certainty and intentional tort). (Emphasis added.)
Here, there is no evidence that a similar accident has ever occurred on any Nerone project, and this indicates that Nerone did not have actual or constructive knowledge that such an accident would be substantially certain to occur. See Watson v. Cleaners Hanger Co. (Oct. 22, 1998), Cuyahoga App. No. 74314 ([T]he lack of prior accidents does tend to show the accident was unexpected and not substantially certain to occur.). Accord Brookover v. Flexmag Industries, Inc., Washington App. No. 00CA49, 2002-Ohio-2404, at ¶ 123, quoting Taulbee v. Adience, Inc. (1997), 120 Ohio App.3d 11, 20, 696 N.E.2d 625 ("[T]he absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed.").
Based on the record before us, we have determined that Gertz failed to present evidence to establish the second prong of the Fyffe test, i.e., that Nerone knew or should have known that, by having its employees install the roof decking 27 feet above the concrete floor without fall protection, harm would be substantially certain to occur. Hence, in this case, Gertz has failed to evidence one of the necessary elements to establish a workplace intentional tort.
Based on the foregoing, we have concluded that the court properly granted summary judgment on this claim, and we therefore overrule this assignment of error.
The second assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE NERONE SONS, INC. ON THE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
The trial court also granted Nerone's motion for summary judgment on Konrad's intentional infliction of emotion distress claim. Konrad maintains that he presented evidence on each element of his claim, and he therefore asserts that his case should have survived summary judgment.
Nerone, on the other hand, asserts Konrad failed to present any evidence of the first two elements of establishing intentional infliction of emotional distress, i.e.: (1) that Nerone intended to cause Konrad serious emotional distress, or knew or should have known that its failure to provide fall protection equipment would result in serious emotional distress to Konrad; and (2) that its failure to provide fall protection constituted extreme and outrageous conduct.
As we stated in Burkes v. Stidham (1995), 107 Ohio App.3d 363,375, 668 N.E.2d 982:
 A claim for intentional infliction of emotional distress requires proof of the following elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it. Ashcroft v. Mt. Sinai Medical Ctr. (1990), 68 Ohio App.3d 359, 588 N.E.2d 280. * * *
Here, there is no evidence that Nerone intended to cause Konrad Luther emotional distress, or that it knew or should have known that its failure to provide fall protection equipment would result in Konrad's extreme emotional distress. Further, even assuming such knowledge on Nerone, its failure to provide safety equipment cannot be said to be so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.
In this regard, we are guided by Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 453 N.E.2d 666, where the court adopted comment d to Section 46 of the Restatement of the Law 2d, Torts (1965), 73, which described extreme and outrageous conduct as follows:
 "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
 Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'
In the instant case, Konrad merely presented evidence that Nerone failed to provide fall protection to its employees who were laying roof decking 27 feet above the concrete floor; this malfeasance does not rise to the level of extreme and outrageous conduct.
Based on the foregoing, we have concluded that the court properly granted summary judgment on the emotional distress claim. Accordingly, we reject this assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and KENNETH A. ROCCO, J., CONCUR